UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ERNEST E. JOHNSON, III and | ) | |
|---|---|---|
| BRIAN S. PRINDLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:10-cv-00442-JAW |
| | ) | |
| VCG HOLDING CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR CHANGE OF VENUE**

In this Fair Labor Standards Act (FLSA) and Maine Overtime Law case, the Court denies the employer's motion for change of venue to where it is headquartered because the employer failed to demonstrate that transfer would be in the interests of justice or for the convenience of the parties and witnesses.

**I.    STATEMENT OF FACTS**

On October 27, 2010, Ernest E. Johnson, III and Brian S. Prindle filed a class action lawsuit against VCG Holding Corporation (VCG), alleging that, although they and others were VCG employees, VCG had failed to comply with the FLSA and state of Maine Overtime Law. *Compl.* (Docket # 1). On December 9, 2010, VCG moved for change of venue to the United States District Court for the District of Colorado. *Def. VCG Corp.'s Mot. to Transfer Venue to the Dist. of Colorado* (Docket # 8) (*VCG Mot.*). On January 4, 2011, the Plaintiffs objected. *Resp. of Pls. to Def.'s Mot. to Transfer Venue* (Docket # 14) (*Pls.' Opp'n*). On January 14, 2011, VCG

replied. *Def. VCG's Reply Br. in Support of its Mot. to Transfer to Dist. of Colorado* (Docket # 15) (*VCG Reply*).

## II. THE PARTIES' POSITIONS

### A. VCG's Position

VCG moves to transfer this cause of action to the District of Colorado, saying that Colorado is "the district where VCG is incorporated, the location where it principally conducts its business and where the majority of the witnesses and documents material to this dispute are located." *VCG Mot.* at 1. Citing caselaw, VCG says that venue is often moved in FLSA cases to the district where the employer has its headquarters if the original forum state does not have a strong interest in the outcome. *Id.* at 4-5. VCG observes that its corporate and business structure is based in Colorado, not Maine. *Id.* at 5-6. It admits that as a holding company, VCG owns stock, membership or partnership interests in a variety of nightclubs, including KenKev II, Inc. (KenKev), a Maine corporation which does business under the name of PT's Showclub Portland. *Id.* at 5–6. But VCG adds that KenKev is only one of eighteen similar businesses throughout the country in which VCG has an ownership interest. *Id.* at 5-6. On a day to day basis, KenKev is managed, according to VCG, by a Maine resident who is in charge of employment decisions. *Id.* at 6. VCG has a wholly–owned subsidiary, International Entertainment Consultants, Inc. (IEC), which provides management consulting services to its subsidiaries and is located in Colorado. *Id.* at 6. VCG says that of the twenty-six employees it identifies as having material information about the

2

lawsuit, a majority resides in Colorado. *Id.* at 7. Moreover, other potential witnesses are scattered throughout the United States; some closer to Maine than Colorado, many not. *Id.* at 7-8. Observing that Colorado is 1,800 miles from Maine, VCG contends that requiring its senior employees to litigate a case in Maine would cause its business "serious disruption". *Id.* at 8-9. VCG also notes that the documents relevant to this cause of action, such as personnel files, payroll records, corporate books and records, are all located in Colorado. *Id.* at 9. Anticipating the Plaintiffs' argument, VCG says that a plaintiff's choice of forum is a less significant factor in a putative class action. *Id.* at 10. Finally, VCG points to statistics from the Administrative Office of the Courts (AO) which indicate that the median disposition time for civil actions in the District of Colorado is somewhat less than in the District of Maine, a factor that it says supports transfer. *Id.*

### B. The Plaintiffs' Response

In their opposition, the Plaintiffs dispute VCG's contention that a plaintiff's choice of forum is less significant in a FLSA case. *Pl.'s Opp'n.* at 2-3. Instead, they cite caselaw in which courts have concluded that Congress intended a plaintiff's choice of forum to be a significant factor in FLSA lawsuits. *Id.* The Plaintiffs also point out that, although it is true that the District of Maine will be inconvenient for VCG's witnesses, the District of Colorado would be equally inconvenient for the Plaintiffs and their Maine witnesses. *Id.* at 3. They contend that about fifty of the one hundred and sixty potential opt-in plaintiffs are closer to Maine than to Colorado and that in any case, representative testimony is typically allowed in the

3

First Circuit. *Id.* Furthermore, they note that the two known representatives are in Maine, that it is speculative where the ultimate opt-in plaintiffs will come from, and that a Colorado forum would be markedly inconvenient for the known plaintiffs. *Id.* at 4. Regarding document production, the Plaintiffs minimize the inconvenience of the actual location of the documents since most will be reduced to an electronic format. *Id.* at 4-5.

Conceding that Colorado has an interest in policing corporate compliance with its laws, the Plaintiffs argue that this interest is counterbalanced by Maine's interest in policing its own labor laws. They observe that part of the case involves Maine law and that Maine has an interest both in VCG's compliance with its state statutes and the protection of Maine residents working in Maine for out of state businesses. *Id.* at 5. Finally, the Plaintiffs distinguish the cases VCG cites. *Id.* at 6-7.

**C.     VCG's Reply**

In reply, VCG points out that the Plaintiffs failed to supply any affidavits or documents in support of their factual contentions and VCG urges the Court to accept as proven for purposes of the motion to transfer, the facts as VCG set them out in its motion. *VCG Reply* at 1-2. VCG refutes the Plaintiffs' assertion that FLSA caselaw supports the Plaintiffs' choice of forum as a significant factor in change of venue motions. *Id.* at 2-4. VCG reiterates its earlier argument that the convenience of the witnesses and the location of the documents "compel[]" transfer. *Id.* at 5. Finally, regarding the Maine law claim, VCG urges the Court to refuse to

assert supplemental jurisdiction over the state law claim, or if jurisdiction is asserted, to sever the state law claim and send the FLSA count to the District of Colorado for adjudication. *Id.* at 6.

## III. DISCUSSION

### A. General Principles

Under 28 U.S.C. § 1404(a), a district court is authorized "[f]or the convenience of the parties and witnesses," to transfer any civil action to any other district or division where it might have been brought. The burden of proving the propriety of a transfer lies with the party seeking it. *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir, 2000). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12 (1st Cir. 2009).

The United States Supreme Court has advised district courts to consider both "private concerns" and "public interest factors" in exercising their § 1404(a) discretion. *Stewart*, 487 U.S. at 30-31. Private factors include "the statutory considerations of convenience of the parties and witnesses, but also often include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3847 (2007 ed.) (FEDERAL PRACTICE AND PROCEDURE). Public factors "encompass the statutory consideration

5

of the interest of justice, focus on judicial economy and often include the district court's familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts." *Id.*

## B. Potential Jurisdiction of the Transferee District

A preliminary question is whether the lawsuit could have been brought in the proposed transferee district. *Hoffman v. Blaski*, 363 U.S. 335, 342-44 (1960). A lawsuit under the FLSA could have been brought in the district where the employer is headquartered and incorporated. 28 U.S.C. § 1391(c). Here, VCG says that it is headquartered and incorporated in Colorado. Accordingly, VCG has met this essential jurisdictional prerequisite for transfer.

## C. Plaintiff's Choice of Forum

Traditionally, the plaintiff's choice of forum is a factor that weighs in favor of the plaintiff in evaluating a motion for transfer of venue. In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981), the United States Supreme Court noted that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *See also Coady*, 223 F.3d at 11 ("The burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum"). VCG says that the rule is different in putative class actions, especially involving FLSA claims. The Court agrees it is logical in a nationwide class action that the plaintiff's choice of forum is entitled to less deference. *Wiley v. Gerber Prods.*, 667 F. Supp. 2d 171, 174 (D. Mass. 2009)

6

(stating that the logic of the argument against a strong presumption favoring the plaintiff's forum is "convincing"); *cf. Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . , the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened") (applying analogous common law doctrine of *forum non conveniens* to shareholder derivative suit).

VCG's contention that district courts routinely transfer FSLA lawsuits to the district where the employer is headquartered when the forum does not have a strong interest in the outcome of the dispute is less convincing. VCG relies on *Ingram v. Family Dollar Stores of Ala., Inc.*, CV-06-BE-1507-S, 2006 U.S. Dist. LEXIS 96845 (N.D. Ala. Sep. 29, 2006), which ordered a transfer from Alabama to North Carolina in a FSLA case. However, in *Ingram*, the Alabama plaintiff had filed her complaint as a collective action on behalf of herself and "all other employees employed by the Family Dollar Store in the United States of America" *Id.* at *2. By the time the District Court considered Family Dollar Stores' motion, six other courts had granted motions to change venue to North Carolina in similar FSLA collective actions. *Id.* at *2 n.1. Furthermore, the plaintiff in *Ingram* alleged that the harm was a centralized legal wrong, which occurred at Family Dollar Stores' corporate headquarters in North Carolina. *Id.* at 8. It is true that *Ingram* is similar in some ways to this case. The *Ingram* Court noted the relative absence of witnesses located in Alabama as opposed to North Carolina, the location of personnel and corporate documents in North Carolina, which the Court termed the

7

"natural and logical epicenter of the material events", and the fact the complaint alleged a class action national in scope. *Id.* at *9-10. But the Court emphasized that "[p]erhaps the most significant reason to transfer this case to North Carolina is the fact that six other FLSA collective actions have been transferred there." *Id.* at *11.

In addition to citing *Ingram,* VCG footnotes six cases in support of its proposition that district courts "routinely transfer nationwide FLSA collective actions to the district wherein the defendant corporation maintains its headquarters when the forum does not have a strong interest in the outcome of the dispute." *Def.'s Mot.* at 4. A careful review of those cases reveals that they stand on their own facts, which invariably involved transferor districts with less interest in the dispute than Maine has here.

In *Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529 (WHP), 2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. Jun. 4, 2007), the Court ordered a transfer to the district where the employer was headquartered; however, the facts were singular. Although the plaintiff filed the case in the Southern District of New York, the parties, including the plaintiff, agreed that the Southern District was not "the most suitable forum for the litigation" and that a transfer was appropriate. *Id.* *2. They disagreed whether the transfer should be to the district where the employer was headquartered, or to the district where the plaintiff's store was located, *Id.* at *3-4. The district court substantially discounted the plaintiff's choice of forum in part because the claim was a national class action and in part because the plaintiff had

initially selected a forum he conceded was "not the most appropriate for the action." *Id.* at *5-6. The court concluded that the plaintiff's second choice "weighs in favor of Plaintiff, but with considerably less force than it would under other circumstances." *Id.* at *6. *Earley* is of some assistance to VCG because the court resolved in favor of the employer such factors as the location of the operative facts, access to sources of proof, and the convenience of the parties. At the same time, *Earley* remains unusual because the parties agreed that the original jurisdiction was inappropriate and that the case had to be transferred somewhere else.

VCG cites *Dole v. Diversified Collection Services, Inc.*, No. 88 C 1693, 1990 U.S. Dist. LEXIS 14115 (N.D. Ill. Oct. 23, 1990). However, *Dole* is a markedly different case on its facts. First, the plaintiff in *Dole* was the Secretary of the Department of Labor (DOL), a plaintiff with an active enforcement presence in the transferee district. *Id.* at *22-23. Second, the DOL had filed an identical FLSA lawsuit in the transferee jurisdiction. *Id.* at *26. In ordering transfer, the district court sought to avoid duplicative litigation by transferring the case to the district where a "virtually identical action" was pending. *Id.* at *26. Although there are some similarities, such as the location of the corporate witnesses and documents, the Court views *Dole* as dissimilar from the facts in this case and unpersuasive authority for a general rule of transfer.

*Coen v. Hoffmann-La Roche Inc.*, No. 06 Civ. 13497 (RMB)(RLE), 2007 U.S. Dist. LEXIS 23132 (S.D.N.Y. Mar. 21, 2007) is similar to *Earley*. Neither plaintiff resided in New York, where they brought the lawsuit; one lived in New Jersey and

9

the other in Kansas. *Id.* at *8. The Defendant sought to have the case transferred to New Jersey, where it was headquartered and where it had its principal place of business. *Id.* The district court discounted the plaintiffs' choice of forum in part because their chosen forum was "not their home district." *Id.* at *10. Indeed, the court observed that the transferee district was the home district of one of the plaintiffs. *Id.* at *11. The district court readily concluded that the "center of gravity" for the lawsuit was New Jersey. *Id.* at *13. Like *Earley*, *Coen* presents an unusual set of facts that defies the proclamation of a general rule.

VCG's fourth cited case is *Montgomery v. TAP Enterprises, Inc.*, No. 06 CV 5799 (HB), 2007 U.S. Dist. LEXIS 12702 (S.D.N.Y. Feb. 26, 2007). Like *Earley* and *Coen*, neither of the plaintiffs in *Montgomery* lived in New York, where they brought the lawsuit: one lived in Missouri and the other in Texas. *Id.* at *4-5. The Defendant was a Nebraska corporation with headquarters in Kansas and authorized to do business in Missouri. *Id.* at *3. Addressing the convenience of the witnesses and the parties, the district court observed that the plaintiffs had failed to identify one witness who resided in the state of New York or in any of its adjoining states. *Id.* *11. The district court ordered the case transferred to Missouri, which was not where the defendant was headquartered and not where the corporate documents were retained. *Id.* *14-18. *Montgomery* provides no support for VCG's contention that courts "routinely transfer nationwide FLSA collective actions to the District where the defendant corporation maintains its headquarters," *Def.'s Mot.* at 4.

10

VCG's fifth and sixth cases are *Neil Brothers, Ltd v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325 (E.D.N.Y. 2006) and *In re Amoskeag Bank Shares, Inc. Litigation*, C.A. Nos. 89-4594, 89-5111, 89-5461, 1990 U.S. Dist. LEXIS 114 (E.D. Pa. Jan. 4, 1990). Neither case is a FSLA cause of action; therefore, neither supports VCG's contention that there is a general rule of transfer in FSLA cases to the district of the headquarters of the employer.[1]

Even if these cases reflect a trend to transfer actions when the chosen forum does not have a strong interest in a FLSA dispute, the trend is not convincing because Maine has a stronger interest in this dispute than the transferor districts in any of those cases. Unlike the plaintiffs in *Earley*, *Coen*, and *Montgomery*, Messrs. Johnson and Prindle both reside in the forum state. Unlike the plaintiffs in *Montgomery*, they have also identified other witnesses who reside in the forum state. Furthermore, Messrs. Johnson and Prindle do not have a presence in the proposed transferee district as the DOL had in *Dole* and as one of the plaintiffs had in both *Coen* and *Montgomery*. Finally, there is no suggestion that an identical action is pending in a different district like in *Ingram* and *Dole*.

Observing that the FLSA provides an "opt-in" procedure under 29 U.S.C. § 216(b), other courts have concluded that "Congress intended to give plaintiffs

---

[1] Neither case is helpful more generally on the issue of transfer presented here. *Neil Brothers* involved a patent dispute between a British and a Tennessee business that had been filed in the Eastern District of New York. Again, other than some sales, there was no apparent connection with New York state. *Neil Bros.*, 425 F. Supp. 2d at 329-31. Observing that the British business would be obligated to travel a long distance wherever the lawsuit was litigated, the Court concluded that Tennessee would be a preferable venue since at least one of the parties would not be inconvenienced. *Id.* at 328. In *In re Amoskeag Bank Shares,* the Pennsylvania district court noted that "[a]ll of the defendants are citizens and residents of New Hampshire. None of the named plaintiffs is a citizen or resident of Pennsylvania." 1990 U.S. Dist. 114 at *1. The Court had little difficulty transferring the case to New Hampshire.

considerable control over the bringing of an FLSA action". *Alix v. Shoney's, Inc.*, No. 96-2812 Section "R"(1), 1997 U.S. Dist. LEXIS 1963 *10 (E.D. La. Feb. 18, 1997); *Salinas v. O'Reilly Automotive, Inc.*, 358 F. Supp. 2d 569, 571 (N.D. Tex. 2005) (stating that in FLSA collective actions, "as opposed to Rule 23 class actions, 'no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is given his written, filed consent'"); *Onyeneho v. AllState Ins. Co.*, 466 F. Supp. 2d 1, 5 n.2 (D.D.D. 2006) (stating that "collective actions under the FLSA require prospective plaintiffs to affirmatively opt-in to the action, unlike class actions under Federal Rule of Civil Procedure 23, in which plaintiffs are included unless they opt-out"); *Guerrero v. Habla Communicaciones*, No. H-05-3620, 2005 U.S. Dist. LEXIS 41358 *6-7 (S.D. Tex. Mar. 16, 2006) (observing that "[i]f such a plaintiff decides that it would be too inconvenient to opt-in here, he or she can file suit closer to home. A plaintiff who does choose to opt-in here would presumably be signaling his judgment that the relative inconvenience was not particularly significant").

The Court concludes that a plaintiff's choice of forum in a FLSA case is entitled to more deference than the choice of forum in Rule 23 national class action cases,

### D. Convenience of the Parties and the Witnesses

Both Plaintiffs reside in the state of Maine and would be inconvenienced if the lawsuit were transferred to the District of Colorado. VCG is incorporated in Colorado, has its headquarters in Colorado, and many (but not all) of its executives

12

reside in Colorado.² It would be inconvenienced if the case were not transferred to Colorado. On its face, this issue is neutral.

The parties have fenced over where the likely, non-party witnesses and "opt-ins" reside and whether they would be more inconvenienced by traveling to Maine or Colorado. The Plaintiffs point out that in the First Circuit, only a small minority of representative plaintiffs are required to actually testify. *Pl.'s Opp'n.* at 3 (citing *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991)). Nevertheless, because VCG's uncontroverted affidavits establish that its business locations and employees are concentrated closer to Colorado than to Maine, the Court views this issue as slightly favoring VCG.³

The Declaration of Micheal Ocello establishes that KenKev, the corporation that directly operates PT's Showclub Portland "is managed by Paul Clement, a Maine resident," and that Mr. Clement is "responsible for all day-to-day managerial activities, such as hiring and firing, establishing policies and procedures, and management of all employees, including persons operating in positions similar to Plaintiffs' position in the Portland, Maine, location." *Ocello Decl.* ¶ 13. Mr. Ocello acknowledges that each VCG business, including KenKev in Maine, maintains records for its employees at its respective location, but he says that IEC, which is

---

² Micheal Ocello, the President of VCG, acknowledged that his primary office is in Sauget, Illinois; he works out of the Denver office about twenty days each year. *Def.'s Mot.* Attach. 8, *Decl. of Micheal Ocello* ¶ 4 (*Ocello Decl.*).

³ Mr. Ocello's Declaration says that VCG owns nineteen entities. *Ocello Decl.* ¶ 18. Six are in Colorado; one in California; five in Illinois; one in Florida; one in Indiana; one in Kentucky; one in Minnesota; one in North Carolina; one in Texas; and one in Maine. *Id.* Mr. Ocello's Declaration also describes the likely VCG witnesses and he concludes that of the twenty-six likely VCG witnesses, fourteen reside in Colorado, six in Illinois, one resided in Maine, and five reside in other areas of the country from Texas to North Carolina. *Id.* ¶ 32.

located in Lakewood, Colorado, processes KenKev's payroll. *Id.* ¶ 15, 29. As the case is currently postured, Mr. Clement's testimony and KenKev's books will be essential for the Maine Plaintiffs' case. This factor slightly favors the Plaintiffs.

E. **Availability of Documents**

One factor the First Circuit has directed district courts to evaluate is the availability of documents. *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). This factor seems like a holdover from a time when businesses kept important records, including payroll records, in paper and the difficulty of physically accessing the paper documents and the burden of transporting them across jurisdictions could be onerous. *See* 15 FEDERAL PRACTICE AND PROCEDURE § 3853 (stating that "since most records and documents now can be transported easily or exist in miniaturized or electronic form . . . their location is entitled to little weight"). It is doubtful that this factor has as much salience now as it did decades ago. Here, for example, Mr. Ocello says that IEC (VCG's Colorado management subsidiary) processes the KenKev payroll from IEC's Lakewood Colorado office and all the payroll records for all IEC managed businesses are located in Lakewood. *Ocello Decl.* ¶ 15, 25. As such, the information from all these entities scattered across the Country must be electronically transmitted to Colorado and the Court is not convinced that this information could not be easily transmitted to Maine.

Mr. Ocello pointed to one set of documents that VCG and its owned businesses continue to maintain in paper format: employment files. *Id.* ¶ 29. According to Mr. Ocello, "[e]ach VCG business maintains its own employment files

14

for its employees at their respective locations," and "[a] copy of each employment file is also maintained by IEC at its business location in Lakewood, Colorado." *Id.* Due to the burden of moving those paper files from their respective locations, the dispersion of the employment files slightly favors VCG.

Otherwise, in general, VCG records and books are maintained in Colorado. *See Def.'s Mot.* at 9. However, KenKev also maintains its own books, records, and payroll in Portland. *Def.'s Mot.* Attach. 8, *Decl. of Marlene Danner* ¶ 10 (*Danner Decl.*). Because KenKev's documents are kept in Maine and Colorado, this factor is neutral to the extent KenKev is the only VCG-owned business involved in this action. However, because other VCG-owned businesses may well become involved, VCG's central maintenance of all corporate documents, including paper copies of employment files, in Colorado slightly favors transfer. At the same time, the Court does not give this factor much overall weight in light of its decreasing relevance.

### F. The Order in Which Jurisdiction Was Obtained

Another factor may be the order in which jurisdiction was obtained. Where there are two cases pending in different jurisdictions, the First Circuit has adopted the "first-filed" rule. *Coady*, 223 F.3d at 11. Here, there is no other action pending in a different jurisdiction. This factor slightly favors the Plaintiffs.

### G. Docket Congestion

VCG presents statistics from the AO indicating that the length of disposition for civil matters is slightly less in Colorado than in Maine. *Def.'s Mot.* at 10. This is a proper factor to evaluate. FEDERAL PRACTICE AND PROCEDURE § 3847. *See Coady*,

15

223 F.3d at 11 (stating that the district court's reliance on the existence of a judicial emergency, "which is materially different from docket congestion," was error). But the difference is not dramatic. *Def.'s Mot.* at 10 (Maine: 6.8 months; Colorado: 6.3 months). VCG itself agrees that the median time to disposition in Maine and Colorado is similar. *Id.* The Court views this factor as being neutral.

### H. District's Familiarity With Governing Law

A district's familiarity with the governing law is an appropriate factor to consider. *Van Dusen*, 376 U.S. at 643. Plaintiffs' second claim is grounded in Maine state law. *Compl.* ¶¶ 22–24. The District of Colorado is undoubtedly capable of applying Maine law; yet, the District of Maine is more familiar with Maine law and in a better position to apply it. *See Jackson Nat. Life. Ins. Co. v. Economou*, 557 F. Supp. 2d 216 (D.N.H. 2008). VCG recommends the Court resolve this discrepancy by severing the state law claim or denying supplemental jurisdiction. *VCG's Reply* at 6. To do so would compel the Plaintiffs to maintain separate actions in separate jurisdictions, contrary to the interests of judicial economy and convenience to the parties that §1404 is designed to protect. *Ecker v. United States*, 575 F.3d 70, 77–76 (1st Cir. 2009); FEDERAL PRACTICE AND PROCEDURE § 3847. This factor favors the Plaintiffs.

## IV. CONCLUSION

Though VCG has good reasons to have this case transferred to Colorado, the Plaintiffs have good reasons to have this case remain where it was brought. On balance, VCG has not convinced the Court that the factors favor transfer and

therefore the Court DENIES Defendant VCG Corporation's Motion to Transfer Venue to the District of Colorado (Docket # 8).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 1st day of March, 2011